## LUCY HIGGINS, Executrix, *versus* SAMUEL CHESSMAN.

Where H. purchased three quarters of a vessel, two quarters for himself and one quarter for C., according to a previous agreement between them, and had the bill of sale of the three quarters made to himself alone, and agreed to make a bill of sale of one quarter to C., but when C. applied for a bill of sale afterwards, refused to deliver it, it was *held*, that H. could maintain no action against C. for the price of one quarter without first tendering a bill of sale.

H., in his lifetime, made a bill of sale to C., but did not deliver it, and his executrix, more than two years after the original purchase, tendered this bill of sale to C., which he refused to accept. *Held*, that the executrix could not maintain any action against C. for the price of the one quarter.

A certificate signed by C., that he had purchased one quarter of the vessel of H., is not conclusive evidence of a sale to C., and the property is not transferred to him, if it was understood by the parties at the time the certificate was given, that a bill of sale was to be given in order to complete C.'s title.

THIS was assumpsit. The plaintiff, in the first count, claimed one quarter part of the disbursements of the sloop Register, against the defendant as owner of one quarter part of the vessel. The second count was upon a sale of one quarter of the sloop, and a promise by the defendant to pay to the testator, Asa Higgins, one quarter part of the amount which the testator had paid for the sloop. The declaration also contained counts for money had and received and for interest.

The case was tried on the general issue, before *Morton* J. The evidence in the case showed that the defendant, on November 30th, 1825, wrote to the testator, offering to take a

Higgins
*v.*
Chessman.

quarter or third of a sloop to run as a packet between Boston and Orleans on Cape Cod, of which the testator was to own a third. Both parties made some exertions to find a suitable vessel, and at last the testator purchased three quarters of the sloop Register at the rate of $850 for the whole ; and a bill of sale of the three quarters was made to the testator alone. Soon after, the defendant gave the testator the following certificate ; — " Boston, 7th April, 1826. This will certify, that the subscriber has this day purchased of Capt. Asa Higgins, one quarter part of the sloop Register, now under the command of said Higgins, to be employed as a packet, and the price to be paid is one quarter of the amount paid by said Higgins, and the risk of one quarter is on account of said Chessman. *Samuel Chessman.*" At the time this certificate was given, the defendant paid the testator $218·47, for which amount the testator gave a note to the defendant, payable on demand with interest. The testator told the defendant that he had not then a bill of sale of the sloop, but would procure one, and the next time he came to Boston would give it to the defendant. The next time the testator came to town the defendant asked him for the bill of sale and for a settlement, and frequently afterwards asked for the bill of sale. But the testator refused to do any thing about it, but gave no reason for his refusal. The defendant went on board the vessel several times and had some conversation about repairing her, and sometimes spoke of her as if he was a part owner.

In the spring of 1827, the testator being then unwell, said, that the defendant had nothing to do with the sloop, and desired Luther Sears to inform the defendant, that when he got well, he would go to Boston and have the papers fixed.

After the testator's death, the executrix, in the summer of 1828, sent the defendant a bill of sale of one quarter part of the sloop, which had been made by the testator in his lifetime, and bore date April 5th, 1826 ; but the defendant refused to receive it. It did not appear that this bill of sale had ever been offered to the defendant before.

It was contended for the plaintiff, that the defendant's certificate was conclusive evidence of the purchase of one quarter of the sloop by him. But the judge instructed the jury that

the certificate was not conclusive, but was open to explanation by other evidence ; that a vessel might be sold, without deed, like other chattels, but that to transfer the property in a vessel, it was necessary, not only that there should be a contract of sale, but a delivery of possession ; and that to pass the property in a vessel by deed, it was necessary, not only that it should be signed and sealed, but also delivered, which could only be done by the vendor in his lifetime.

It was also contended by the plaintiff's counsel, that the certificate, supported and explained by the other evidence, was conclusive evidence of a sale and delivery, so as to pass the property, and constituted a sufficient consideration for the promise in the certificate on which the action was founded ; and that if the testator refused to give a bill of sale on request, the defendant had his remedy by action. It was also contended, that in order to entitle the defendant to a bill of sale, it was incumbent on him first to tender the consideration ; which he had never done. But the judge instructed the jury, that to entitle the testator to the consideration, he was bound first to have tendered the defendant a bill of sale.

The plaintiff's counsel excepted to the above instructions, and a verdict having been found for the defendant, moved for a new trial.

*Reed*, for the plaintiff, contended, that the evidence showed a purchase completed on the part of the defendant, — that a bill of sale was not necessary to pass the property, — and that the defendant's going on board proved a delivery to him. *Taggard v. Loring*, 16 Mass. R. 336 ; *United States v. Willings*, 4 Cranch, 47 ; *Wendover v. Hogeboom*, 7 Johns. R. 308. The construction of the certificate of the defendant must be decided by the Court. *Fowle v. Bigelow*, 10 Mass. R. 384. And the meaning and effect of this certificate cannot be varied by parol evidence. *Richards v. Killam*, 10 Mass. R. 239 ; *Dwight v. Pomeroy*, 17 Mass. R. 328 ; *Lewis v. Thacher*, 15 Mass. R. 432.

*Marston*, for the defendant.

PARKER C. J. delivered the opinion of the Court. The decision of this case depends upon this question, whether by virtue of the transactions between Higgins and Chessman the latter

Higgins
*v.*
Chessman.

9

*Oct. 20th.*

*Oct. 22d.*

became owner of one fourth of the vessel called the Register. She was purchased by the testator in consequence of a pre-existing bargain between him and the defendant, as proved by the letters and other evidence in the case. When the testator purchased, he might have taken a bill of sale in the name of Chessman as well as himself. The mode pursued created a necessity of a conveyance from him to the defendant, and in order to charge the defendant with the price of one fourth, he should have offered a conveyance to him, or at least have been ready to deliver it when asked for.

It is urged by the counsel for the plaintiff, that the certificate signed by Chessman on the 7th of April is evidence, not of a contract to purchase only, but of a complete executed sale. This would have that effect between the two parties to the contract, if it were so intended ; for when a bargain is made for a chattel, and the price is paid, the contract is executed, so that the vendee may maintain trover for the chattel against the vendor, upon demand and refusal to deliver. But if at the time of the contract it is understood and intended that some other act is to be done to complete the sale, such as a formal delivery or a bill of sale, the transfer is not complete until such act is done. It seems evident, from the facts reported, that it was intended and expected a bill of sale should be given by Higgins to Chessman. It was frequently asked for, and when the money was paid by Chessman, a promissory note was given for it by Higgins ; which would not have been done, if the parties considered the transfer executed by the payment of the money and the certificate of Chessman.

There are facts testified to by witnesses in regard to the conduct and declaration of both parties, which seem to be inconsistent with the grounds taken by either. Chessman acted in some respects as if owner. He was on board the vessel, speaking of repairs, &c. and in the spring following, said he should not have taken any share of the vessel, had he not expected that the witness would have gone in her. On the other hand, the conduct of Higgins is inconsistent with any supposition on his part, that Chessman had become an owner. He refused to deliver a bill of sale, and he said at a late period, that Chessman had nothing to do with the vessel, but that when

he got well he would go up to Boston and settle that matter. It was a question for the jury, and they might find that it was not intended to transfer till the bill of sale should be made and delivered.